UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD HUDDLESTON,<br><br>                   Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>                   Respondent. | Case No. 2:11-cv-00177-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

This action is before the Court on Petitioner Richard Huddleston's Petition for Review (Dkt. 1), seeking reversal of the Social Security Administration's final decision to deny disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). After carefully reviewing the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order denying the relief sought in Huddleston's Petition for Review.

### ADMINISTRATIVE PROCEEDINGS

On September 2, 2008, Richard Huddleston ("Petitioner" or "claimant") applied for Social Security Disability Insurance Benefits, alleging a disability onset date of

**MEMORANDUM DECISION AND ORDER - 1**

November 8, 2007, when he was 41 years old. (AR 17, 118). Administrative Law Judge ("ALJ") Paul T. Hebda conducted a hearing in Spokane, Washington, on December 15, 2009. At the hearing, Petitioner was represented by attorney Louis Gerbrecht. An impartial vocational expert, Sharon Welter, also appeared and testified. At the time of the hearing, Petitioner had past relevant work as a logger. (AR 24).

On January 15, 2010, the ALJ issued his decision denying Petitioner's claim for disability. (AR 17-30). Petitioner timely requested review by the Appeals Council, which ultimately upheld the determination of the ALJ on March 3, 2011, making the denial the final determination of the Commissioner. In denying Petitioner's claim, the Commissioner determined that Petitioner was not disabled within the meaning of the Social Security Act. (AR 23-38).

## DISCUSSION

### A.  Standard of Review

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

**MEMORANDUM DECISION AND ORDER - 2**

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether the finding is based on an application of proper legal standards.

**B.      Administrative Procedure**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

    **1.      Five-Step Sequential Process**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied,

regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA since November 8, 2007, the alleged onset date. (AR 19). Petitioner does not dispute this finding.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At this step, the ALJ found that Petitioner had the following severe impairments: disorder of the back status post lumbar fusion, and dysthymic disorder. (AR 17). Petitioner does not dispute this finding by the ALJ.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed

impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*.

Here, the ALJ concluded that "[a]lthough sever, it must be found, based upon the available evidence, that the claimant's impairment or combination of impairments does not meet or equal the severity of any [listed] impairment. (AR 25) Petitioner disagrees with this determination.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC represents their ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

After considering the evidence presented in the administrative record and at the hearing, the ALJ determined here that the Petitioner has the residual functional capacity

to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (AR 26). The ALJ concluded, however, that Petitioner is unable to perform past relevant work as a logger. (AR 28). Accordingly, the claim could not be resolved at step four, and the ALJ's evaluation proceeded to the fifth and final step of the process. *See* 20 C.F.R. § 404.1520(e) (AR 20–27).

When the claim reaches step five, the ALJ considers if the claimant is able to do any other work. 20 C.F.R. § 404.1520(f)(1). On the fifth step, the burden shifts to the ALJ. *Id.* If the ALJ finds that claimant cannot work, then the claimant is "disabled" and entitled to disability insurance benefits. *Id.* However, if the ALJ determines that the claimant can work, the ALJ must also establish that there are a significant number of jobs in the national economy that claimant can do in his or her condition. *Id.* "If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). The ALJ can meet this burden two ways. *Id.* First, the ALJ can solicit the testimony of a vocational expert, or second, the ALJ can reference the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Id.*

In the instant action, the ALJ, based on the testimony of a vocational expert, concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.." (AR 34). Specifically, the ALJ determined that Petitioner is "able to perform the requirements of representative occupations such as

cashier, with 2,000 jobs in Washington and 150,000 in the nation, mail clerk, with 2,000 jobs in Washington and 101,000 in the nation, or as office helper, with 1,300 jobs in Washington and 80,000 in the nation." (AR 29). The ALJ based this determination on the testimony of a vocational expert, and went further to find "the vocational expert's testimony consistent with the information contained in the Dictionary of Occupational Titles. (AR 29).

**B.     Analysis**

Petitioner seeks judicial review of the denial of benefits, arguing that the ALJ erred in three respects. First, he argues that the ALJ wrongly rejected the opinion of Dr. Ganz, Petitioner's neurosurgeon. Second, he claims that the ALJ improperly discounted Petitioner's subjective pain testimony. Finally, he submits that the AJL failed to establish that there are a substantial number of jobs in the national economy suitable for Petitioner.

In response, the government argues that the ALJ's determination is supported by substantial evidence in the record. Respondent directly disagrees and attempts to refute all of Petitioner's arguments. Specifically, Respondent argues that Petitioner did not establish that he met his burden of showing he was disabled under the Act. *Id.* Respondent asserts that the ALJ properly weighed all of the medical evidence and Petitioner's own testimony, giving adequate reasons for rejecting any opinions rendered. *Id.* Finally, Respondent argues that Petitioner's argument regarding the number of jobs in the economy is without merit because the ALJ properly relied on the testimony of the vocational expert. (Respondent's Brief, Dkt. 15 at 13.) Respondent concludes, stating

that the ALJ's "conclusion was reached upon the basis of substantial evidence and the correct legal standards; it is conclusive and should be sustained." (14)

### 1.      Weight of Medical Evidence

In his application for benefits, Petitioner presented evidence from a number of physicians, including Dr. William Ganz, Petitioner's treating neurosurgeon. In Petitioner's opinion, the ALJ rejected the opinion of Dr. Ganz that Petitioner's pain was completely disabling. Petitioner argues that the ALJ gave little to no weight to Ganz's opinions regarding Petitioner's pain and that the ALJ fails "to offer any reasons for disregarding" his opinion.

Respondent contends that the ALJ in fact did consider Ganz's opinion and extensive medical records. Rather, Respondent argues that the portion of Ganz's opinion that Petitioner claims was not considered by the ALJ, was actually Ganz's record relating to Petitioner's own subjective testimony, and not a clinical diagnosis of any kind. Further, Respondent argues that the ALJ thoroughly and properly explained his evaluations of all the medical evidence, and analysis given, and treatment of the other doctors' testimony.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, as treating physicians have a greater opportunity to observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating physician's opinion is normally entitled to deference, it is not necessarily determinant as to the question of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir. 1989). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion are all sufficient reasons for rejecting an opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

After reviewing the record and the files of Dr. Ganz, the Court finds, and thus concludes, that the ALJ gave the opinions of Petitioner's treating doctor, Dr. Ganz, proper consideration. The ALJ provided a seven-page analysis of Petitioner's medical records including interpretation, weight given and adequate support for those decisions. From the Court's view, the ALJ in fact deferred to Ganz's opinion. The records Petitioner claims to support a finding of disability, the discogram and Ganz's opinion of the discogram, are at best inconclusive. The proffered records show only that Ganz recorded Petitioner's belief that he was disabled, which does not necessarily reflect Ganz's opinion.

A court must uphold the determination of the commissioner if the findings are "supported by inferences reasonably drawn from the record." *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is the case, even when there is "more than one

rational interpretation" of the evidence. *Id*. In this case, the ALJ properly supported his findings, including adequate consideration of all medical evidence. Accordingly, the determination of the Commissioner will not be disturbed or overruled on this basis.

### 2. Credibility of Petitioner

At the hearing, Petitioner testified to having physical limitations, some of which are inconsistent with the light-work RFC determination. In his determination, the ALJ accepted Petitioner's subjective testimony, except to the extent it would be inconsistent with the RFC assessment, reasoning that such claims were unsupported by objective medical evidence. Petitioner argues that the ALJ failed to properly support this finding. (*Petitioner's Brief*, 8 Docket No. 12). Specifically, Petitioner challenges the ALJ's findings regarding Petitioner's testimony because "the diskogram and surgery records were never discussed by the ALJ".

Respondent argues that the ALJ's credibility determination is supported by clear and convincing reasons. Specifically, Respondent points out that the ALJ noted the observations of Bruce Woodall, M.D., Jeffery Larson, M.D., and Tim Rehnbert, Ph.D., which indicated that Petitioner may be exaggerating the extent of his symptoms. Respondent further points out that the ALJ considered Petitioner's medical records and his reported activities of daily living. Finally, Respondent argues that the discogram cited by Petitioner as objective evidence establishing credibility, instead "simply confirmed the source of his pain at L5-S1.

Resolution of conflicting testimony and of credibility questions is a function solely of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). Furthermore, "if the ALJ's credibility finding is supported by substantial evidence in the record," the Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). Indeed, "[c]redibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

After considering the evidence in the record, the ALJ determined that Petitioner was credible regarding the presence of some degree of discomfort and his inability to do some types of work. Likewise, in the view of the ALJ, there was sufficient and reliable evidence to show that Petitioner has "medically determinable impairment" that could produce the pain and other symptoms alleged by Petitioner. (AR 27). However, the ALJ concluded that the record does not support the Petitioner's "statements concerning the intensity, persistence and limiting effects of these symptoms…." (AR 27).

Where, as here, the ALJ finds the claimant's pain testimony to be not entirely credible, the Ninth Circuit has made it clear that "the ALJ may reject the claimant's testimony regarding the severity of [his] symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Reddick*

*v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Specifically, in determining whether the claimant's subjective testimony regarding the severity of her symptoms is credible, "the ALJ may consider claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between h[er] testimony and h[er] conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).

In judging Petitioner's credibility, the ALJ relied on (1) an absence of evidence supporting Petitioner's subjective testimony, including medical records that state that Petitioner's symptoms were not physiological; (2) the medical records of Dr. McDonald, Dr. Adams, Dr. Larson, Dr. Woodall, Dr. Rehnberg, and Dr. Ganz; and (3) inconsistencies in Petitioner's testimony regarding his physical limitations and his conduct, work and daily activities. The ALJ does note, however, that there is no suspicion that Petitioner is malingering. (AR 23).

After carefully reviewing the record, the Court concludes that the ALJ had valid reasons to reject Petitioner's credibility regarding the intensity and persistence of his pain, other symptoms, and his claimed inability to do any type of work. In the Court's view, the record contains sufficient evidence to support the conclusions of the ALJ and that he properly evaluated Petitioner's testimony and provided adequate reasons for finding Petitioner's testimony not entirely credible.

Where, as here, the ALJ has made specific findings supporting a decision to discount certain allegations regarding symptoms and their functional effect on daily activities, and those findings are supported by substantial evidence in the record, as the Court concludes they are in this action, the role of the Court is not to second-guess that decision. *Thomas*, 278 F.3d at 959. The ALJ's findings to reject Petitioner's credibility are sufficiently specific for the Court to conclude that the ALJ's decision is based on permissible grounds and that the ALJ did not arbitrarily discredit Petitioner's testimony. *See Bunnell*, 947 F.2d at 345.

Accordingly, with all the foregoing in mind, the Court concludes that the ALJ's decision to reject certain aspects of Petitioner's subjective testimony concerning his limitations is not erroneous, is supported by substantial evidence, and should not be disturbed on appeal. There is sufficient evidence in the record to uphold the ALJ's findings regarding Petitioner's subjective pain testimony.

### 3. Vocational Expert

At the hearing, the VE testified that Petitioner could perform the jobs of cashier II, mail clerk, and office helper, all light duty jobs with sit/stand options. When asked about the impact of Petitioner's limited reach with his non-dominant hand, the VE testified that Petitioner could perform the job with one arm. The VE further testified that there were virtually thousands of jobs in the national economy within the identified areas.

Petitioner claims that the ALJ erred in relying on the opinion of the vocational expert. Petitioner takes issue with the VE's conclusion that he could perform the jobs

because the Dictionary of Occupational Titles does not include a sit/stand option, nor a one armed option for the cashier II job.  Petitioner further disputes that the ALJ did not meet his burden of proof in concluding that within these fields there are a significant number of jobs in the national economy.

Respondent argues that the ALJ properly relied on the testimony of the VE, further pointing out that the ALJ correctly presented hypothetical questions the VE that reflected Petitioner's actual residual functional capacity.  Respondent concludes that the hypothetical was based on substantial evidence in the record.

It is well settled that an "ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1011 (9th Cir. 1999).  In so doing, the ALJ poses hypothetical questions to the VE that "set out all of the claimant's impairments" for the vocational expert's consideration." *Id*. (*quoting Gamer v. Secretary of Health and Human Servs.,* 815 F.2d 1275, 1279 (9th Cir. 1987)). The ALJ's hypothetical depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Id*. The VE "translates these factual scenarios into realistic job market probabilities by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled."  *Id*. (internal quotations omitted).

At the hearing, the ALJ described the following hypothetical to the VE for consideration:

> [A]n individual of the claimant's age, education, and work experience who is able to perform light level work, and here I am defining that as lifting up to 20 pounds occasionally and lifting and carrying up to 10 pounds frequently; standing and walking for about four hours in an eight-hour day with normal breaks. [The individual also has] manipulative limitations of frequent overhead reaching with the left upper extremity, and work that would involve only occasional changes in work setting.

(AR 62). The ALJ also hypothesized about postural limitations, overhead reach limitations, the combination of Petitioner's medical conditions, and sit/stand job options.

Because of Petitioner's non-exertional limitations, the ALJ is "*required* to take the testimony of a vocational expert." *See Tackett*, 180 F.3d at 1104 (emphasis in original). Here, the ALJ appropriately presented Petitioner's case to the VE. The VE properly evaluated the hypothetical, buttressing her conclusions with full explanations supported by evidence. Accordingly, the ALJ's reliance on the VE was proper and the determination of the Commissioner will not be disturbed on this ground.

## C.     Conclusion

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards. Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision is upheld.

**ORDER**

Based on the foregoing, the decision of the Commissioner is affirmed and this action is dismissed in its entirety with prejudice.

DATED: September 10, 2012

*[signature]*

Honorable Larry M. Boyle
U. S. Magistrate Judge